# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CHRISTOPHER GARDNER, individually
and as heir and as Special Administrator for
THE ESTATE OF ELLEN FINNIE
GALLUCCI,

        Plaintiff,

    vs.

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:16-cv-01384-GMN-CWH

**ORDER**

      Pending before the Court is the Motion to Dismiss, (ECF No. 46), filed by Las Vegas Metropolitan Police Department ("LVMPD"). Plaintiff Christopher Gardner ("Plaintiff") filed a Response, (ECF No. 49), and LVMPD filed a Reply, (ECF No. 50).

      Also pending before the Court is the Motion to Dismiss, (ECF No. 47), filed by Defendants Dustin Bundy ("Bundy"), Brad Friess ("Friess"), Fred Haas ("Haas"), Eric Hutchason ("Hutchason"), Joel Martin ("Martin"), Larry Morton ("Morton"), C. Schallipp ("Schallipp"), and Joshua Stark ("Stark") (collectively "Defendant Officers"). Plaintiff filed a Response, (ECF No. 51), and Defendant Officers filed a Reply, (ECF No. 52). For the reasons set forth herein, LVMPD and Defendant Officers' (collectively "Defendants") Motions to Dismiss are **GRANTED**.

## I.    BACKGROUND

      This case arises from alleged constitutional violations when LVMPD officers initiated a traffic stop of Kenneth Rankin ("Rankin"), a 32-year-old male, to execute an arrest warrant.

(Second Am. Compl. ("SAC") ¶¶ 17–25, ECF No. 36). Rankin was driving eastbound on West Cheyenne Avenue when LVMPD officers initiated the stop. (*Id.*). Rankin remained in his vehicle while officers exited their vehicle but then fled the scene, driving eastbound on West Cheyenne Avenue. (*Id.* ¶¶ 28–35). Concurrently, Ellen Gallucci ("Gallucci") was riding in a vehicle headed northbound on North Jones Boulevard through the intersection of North Jones Boulevard and West Cheyenne Avenue. (*Id.* ¶¶ 33–34). Rankin sped through the intersection and struck the vehicle in which Gallucci was riding. (*Id.* ¶ 36). Gallucci suffered severe blunt trauma that eventually caused her death. (*Id.* ¶ 37).

Plaintiff, heir to Gallucci and Special Administrator of her estate, alleges that Defendant Officers "negligently, with reckless disregard, and indifference, initiated the stop of Mr. Rankin's vehicle, without consideration of the likely dangerous and evasive behavior of Mr. Rankin." (*Id.* ¶¶ 5–7, 27). Specifically, Plaintiff alleges Defendant Officers "met for an operational meeting approximately 45 minutes prior to the multi-car crash which killed Ms. Gallucci." (*Id.* ¶ 19). At this meeting, Plaintiff alleges Defendant Officers identified Rankin as a dangerous felon with an extensive criminal record who is known to be illegally in possession of firearms. (*Id.* ¶ 20). Plaintiff further alleges that Defendant Officers, at the direction of supervisors, went to Rankin's residence and subsequently allowed Rankin to leave, making "no attempt to execute the arrest warrant on Rankin." (*Id.* ¶¶ 21–22). Defendant Officers subsequently initiated the traffic stop of Rankin and Rankin fled the scene. (*Id.* ¶¶ 25, 29). According to Plaintiff, "instead of allowing Rankin to flee, the Defendant Officers, with emergency lights flashing, made a U-turn and began to pursue Rankin." (*Id.* ¶ 32). "In an effort to evade the pursuing law enforcement," Rankin sped dangerously through the intersection of North Jones Boulevard and West Cheyenne Avenue and struck Gallucci's vehicle, resulting in her death (*Id.* ¶¶ 35–37).

Plaintiff filed his Second Amended Complaint (the "Complaint") on August 10, 2017. (ECF No. 36). Plaintiff alleges the following causes of action: (1) 42 U.S.C. § 1983 violations against Defendant Officers and LVMPD; (2) wrongful death against all Defendants; and (3) negligent supervision against all Defendants. (*Id.* ¶¶ 53–77). On August 24, 2017, LVMPD filed the instant Motion to Dismiss. (*See* Mot. to Dismiss ("LVMPD's MTD"), ECF No. 46). On September 7, 2017, Defendant Officers filed its Motion to Dismiss. (*See* Mot. to Dismiss ("Def. Officers' MTD"), ECF No. 47).

## II.  LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys. Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. <u>DISCUSSION</u>

In the instant Motions to Dismiss, Defendants move to dismiss Plaintiff's claims for: (1) violations of 42 U.S.C. § 1983; (2) negligent supervision; and (3) wrongful death. (ECF No. 46); (ECF No. 47). The Court will address each of these claims in turn.

### A. 42 U.S.C. § 1983 Claim Against LVMPD

LVMPD moves to dismiss Plaintiff's section 1983 claim for failure to state a claim. (LVMPD's MTD 7:13–17). Specifically, LVMPD argues that Plaintiff impermissibly bases his claim on a theory of *respondeat superior*, fails to identify an unconstitutional policy or custom, and implies that LVMPD did in fact have procedures in place to prevent Gallucci's death. (*Id.*).

It is well settled that political subdivisions may not be held liable for section 1983 violations of its employees under a theory of *respondeat superior*. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)). However, a plaintiff may establish municipal liability by showing that her injuries arose from a policy or custom of the defendant. *Monell*, 436 U.S. at 694. "[U]nder *Monell*, a plaintiff must prove (1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks and citations omitted).

Here, Plaintiff has not identified any policy or custom of LVMPD that led to the alleged constitutional violations. Plaintiff alleges that "all of the actions of the Defendant LVMPD were performed under color of state law, of a statute, ordinance, regulation, custom or usage

and pursuant to their authority as law enforcement officers." (SAC ¶ 9). Plaintiff cites *Lee v. City of Los Angeles* for the proposition that "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice" is sufficient to survive a motion to dismiss. (*See* Resp. to LVMPD's MTD 12:7–11, ECF No. 49) (quoting *Lee*, 250 F.3d 668, 682–83 (9th Cir. 2001)). As Defendants point out, however, *Lee* was decided prior to the Supreme Court's imposition of the heightened pleading standard set forth in *Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (LVMPD's Reply 6:20–21, ECF No. 50); *see Dougherty*, 654 F.3d at 900 ("Here, [plaintiff's] *Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*."); *see also Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) ("In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable."). Since *Lee*, the Ninth Circuit has clarified that "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In addition, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

　　　　Plaintiff's Complaint fails to establish a plausible entitlement to relief because Plaintiff has not pointed to any LVMPD policy, custom, or practice that caused the alleged constitutional deprivation. *See Dougherty*, 654 F.3d at 900–01. Moreover, Plaintiff's allegations with regard to municipal liability are deficient in another fundamental respect. As discussed *infra*, because the Court concludes that Plaintiff cannot plausibly establish any underlying constitutional deprivation, Plaintiff cannot prevail on his claim for *Monell* liability.

*See, e.g.*, *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 121 (9th Cir. 2010) ("Because we hold that there was no underlying constitutional violation, the [Plaintiffs] cannot maintain a claim for municipal liability."). Accordingly, Plaintiff's section 1983 municipal liability claim is dismissed with prejudice.

### B. 42 U.S.C. § 1983 Claims Against Defendant Officers

Defendant Officers seeks to dismiss Plaintiff's section 1983 claims on the basis that they are entitled to qualified immunity.[1] (Def. Officers' MTD 5:20–21, ECF No. 47).

Courts employ a two-step sequence to resolve government officials' qualified immunity defenses. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At step one, the court must decide whether a plaintiff has pleaded sufficient facts to "make out a violation of a constitutional right." *Id.* "Second, if the plaintiff has satisfied this first step, the court must decide whether the right was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 199 (2001)).

In the Complaint, Plaintiff alleges Defendant Officers deprived Gallucci and Plaintiff of "the right to not be deprived of life or liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution," and "the right to equal protection of the laws as guaranteed by the Fourteenth Amendment." (SAC ¶ 46). Further, Plaintiff alleges Defendant Officers deprived Plaintiff "of the right to a familial relationship without due process of law by causing the death of Ms. Gallucci, decedent, in violation of his rights, privileges and immunities secured by the Fourteenth Amendment to the United States Constitution." (*Id.* ¶ 55). The Court will address each of these claims in turn.

---

[1] As a preliminary matter, Plaintiff's Complaint fails to allege any personal participation by Officers Stark, Bundy, Schallip, Hutchason, Friess, or Morton. (*See generally* SAC, ECF No. 36). Accordingly, the Court dismisses Plaintiff's section 1983 claims against Officers Stark, Bundy, Schallip, Hutchason, Friess, and Morton. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation . . . .").

### i. Plaintiff's Fourth Amendment Claim

Defendant Officers assert that they are entitled to qualified immunity on Plaintiff's Fourth Amendment claim because Plaintiff's claims do not concern a search or seizure. (Def. Officers' MTD 8:11–13). The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment covers only "searches and seizures." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Further, a "seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby) . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id.* (quoting *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original)).

Here, Plaintiff has not alleged any facts suggesting that Defendant Officers effectuated a search or seizure of Gallucci. (*See* SAC ¶¶ 38–52). Notably, there is no allegation that Defendant Officers intentionally terminated Gallucci's freedom of movement. (*Id.*). Therefore, Plaintiff has not established a Fourth Amendment violation, and Defendant Officers are entitled to qualified immunity on this issue. Moreover, the Court further finds that amendment of Plaintiff's Complaint would be futile because Plaintiff cannot plausibly plead any facts suggesting that Defendant Officers intentionally terminated Gallucci's freedom of movement by virtue of their alleged pursuit of Rankin. Accordingly, Plaintiff's Fourth Amendment claim against Defendant Officers is dismissed with prejudice.

### ii. Plaintiff's Fourteenth Amendment Equal Protection Claim

Defendant Officers argue they entitled to qualified immunity on Plaintiff's equal protection claim because Plaintiff cannot allege any facts suggesting the officers intended to discriminate against Gallucci based upon her membership in a protected class. (Def. Officers' MTD 9:7–8). The Equal Protection Clause "commands that no State shall 'deny to any persons

within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Williams v. Vidmar*, 367 F. Supp. 2d 1265, 1269–70 (N.D. Cal. 2005) (quoting *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985)). To establish an equal protection violation, a plaintiff must show the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005).

Here, Plaintiff's Complaint is without any allegation that Defendant Officers intended to discriminate against Gallucci based upon her membership in a protected class. (*See* SAC ¶¶ 38–52). Therefore, Plaintiff's claim fails under the first prong of the qualified immunity analysis. Defendant Officers are, accordingly, entitled to dismissal on Plaintiff's Fourteenth Amendment Equal Protection Claim. The Court further finds that Plaintiff cannot plausibly allege that Defendant Officers intentionally discriminated against Gallucci, based upon her membership in a protected class, by initiating their alleged pursuit of Rankin. Accordingly, Plaintiff's equal protection claim is dismissed with prejudice.

### iii. Plaintiff's Substantive Due Process Claim

Defendant Officers argue they are entitled to qualified immunity on Plaintiff's substantive due process claim because there is no evidence, nor any allegation, that the officers intended to harm Galluci. (Def. Officers' MTD 10:3–4). To establish a substantive due process Fourteenth Amendment claim, a plaintiff must establish that the officers' use of force "shocked the conscience." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 797 (9th Cir. 2014). The Ninth Circuit has recognized that, "[w]here actual deliberation is practical, then an officers' 'deliberate indifference' may suffice to shock the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (citation omitted). "On the other hand, where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be

found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.*

Plaintiff has not pleaded, nor does he argue, that Defendant Officers acted with a deliberate intent to harm Gallucci. (*See* SAC ¶¶ 34–60). Rather, Plaintiff suggests that the dispositive inquiry is whether Defendant Officers had the opportunity to actually deliberate and not whether the officers intended to cause harm. (Resp. to Def. Officers' MTD 19–22, ECF No. 51). Plaintiff cites Ninth Circuit authority for the proposition that "the critical consideration," for Fourteenth Amendment shock-the-conscience analysis is "whether the circumstances are such that 'actual deliberation is practical.'" (*Id.* 11:19–12:3) (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998); *Porter v. Osborn*, 546 F.3d 1131, 1138–39 (9th Cir. 2008)). Contrary to Plaintiff's assertion, however, the Ninth Circuit expressly applied the purpose-to-harm standard in both of those cases. *See Moreland*, 159 F.3d at 372–373; *Porter*, 546 F.3d at 1140. Indeed, the United States Supreme Court has held that the purpose-to-harm standard governs situations where a high-speed police chase results in death or bodily injury. *See Lewis*, 523 U.S. at 854 ("[W]e hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."). The Ninth Circuit has categorically applied this framework to scenarios like the instant case where innocent bystanders are the victims of high-speed chases. For example, in *Bingue v. Prunchak*, the Ninth Circuit explained:

> [W]e conclude that high-speed police chases, by their very nature, do not give the officers involved adequate time to deliberate in either deciding to join the chase or how to drive while in pursuit of the fleeing suspect. We hold, therefore, that *Lewis* requires us to apply the 'intent to harm' standard to *all* high-speed chases.

512 F.3d 1169, 1177 (9th Cir. 2008) (emphasis in original).

Because Plaintiff has not pleaded facts suggesting that Defendant Officers intended to harm Gallucci in their alleged pursuit of Rankin, the Court finds that Plaintiff has failed to state a claim under the Fourteenth Amendment.  Further, in light of the Ninth Circuit's purpose-to-harm standard, the Court concludes that Plaintiff cannot establish that Defendant Officers' decision to pursue Rankin, and Rankin's subsequent collision with Gallucci's vehicle, could conceivably constitute an intent to harm Gallucci on the part of Defendant Officers. Accordingly, Defendant Officers are entitled to qualified immunity and Plaintiff's Fourteenth Amendment substantive due process claim is dismissed with prejudice.

**C. Negligent Supervision**

Defendants seek to dismiss Plaintiff's claim for negligent supervision on the basis that they are entitled to discretionary immunity under Nevada law. (LVMPD's MTD 4:9–15, ECF No. 46); (Def. Officers' MTD 5:5–7, ECF No. 47).

Under Nevada law, no negligence action may be brought against a political subdivision that arises from "the exercise or performance or the failure to exercise or perform a discretionary function . . . whether or not the discretion involved is abused." N.R.S. § 41.032(2).  In determining whether discretionary immunity applies, Nevada courts look to federal law concerning the Federal Tort Claims Act for guidance. *Martinez v. Maruszczak*, 168 P.3d 720, 727 (2007).  Nevada has adopted a federal two-part test to determine whether the discretionary-function exception to the general waiver of governmental immunity applies. *Id.* at 729.  "[T]o fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.*

Applying this framework, the Ninth Circuit has held that "decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield. *Cloes v. City of Mesquite*, 582

F. App'x 721, 727 (9th Cir. 2014) (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).  However, where the alleged violations are "attributable to bad faith, immunity does not apply whether an act is discretionary or not." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007) (quoting *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991)); *see also Franchise Tax Bd. of Cal. V. Hyatt*, 401 P.3d 1110, 1125–26 (Nev. 2014) ("NRS 41.032 does not protect a government employee for intentional torts or bad-faith misconduct, as such misconduct, by definition, [cannot] be within the actor's discretion.").  Under Nevada law, bad faith involves "an implemented attitude that completely transcends the circumference of authority granted the individual or entity." *Davis*, 478 F.3d at 1060 (quoting *Falline*, 823 P.2d at 892 n.3).

Here, Defendants are entitled to discretionary immunity on Plaintiff's negligent supervision claim.  Plaintiff alleges that LVMPD and Defendant Officers Martin and Haas are liable for negligent supervision based on their failure to adequately teach and train officers about initiating high risk stops, allowing dangerous persons into a vehicle, and preventing dangerous persons from fleeing in a vehicle after a high-risk stop. (SAC ¶ 73).  Further, Plaintiff alleges that Defendants failed to teach proper non-pursuit of a fleeing person from a vehicle stop and that LVMPD, Martin, and Haas failed to supervise Defendant Officers during the timeframe relevant to the instant action. (*Id.*).  However, this Court, as well as many other courts in this district, have held that training and supervision are squarely within the category of conduct that is protected by discretionary immunity. *See, e.g.*, *Loggins v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01743-GMN-CWH, 2016 WL 5791543, at *5 (D. Nev. Sept. 30, 2016); *Plank v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-2205-JCM-PAL, 2016 WL 1048892, at *8 (D. Nev. March 14, 2016); *see also Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192 (D. Nev. 2008) ("Because Nevada looks to federal case law to determine the scope of discretionary immunity, and because federal case law consistently

holds training and supervision are acts entitled to such immunity, LVMPD is entitled to discretionary immunity on this claim."). Therefore, discretionary immunity shields Defendants from Plaintiff's negligent supervision and training claim.

Plaintiff further alleges that discretionary immunity does not apply because Defendants operated in bad faith with regard to its alleged failure to supervise and train. (SAC ¶ 75). Specifically, Plaintiff alleges that the "complete failure of training and supervision by Defendant LVMPD and Defendants Lieutenant Joel Martin and Sargent Fred Haas amounts to bad faith conduct." (*Id.*). Beyond this allegation, Plaintiff does not put forth a factual basis to support a finding that Defendants' failure to train and supervise constitutes conduct that "completely transcends the circumference of authority granted the [LVMPD and Defendant Officers]." *See Falline*, 823 P.2d at 892 n.3. In the absence of such a factual basis, Plaintiff's negligent supervision claim cannot survive Defendants' Motions to Dismiss. *See, e.g.*, *Nelson v. Willden*, No. 2:13-cv-00050-GMN-VCF, 2015 WL 4937939, at *3 (D. Nev. Aug. 19, 2015) ("Although Plaintiffs have added accusations of State Defendants engaging in "bad faith" acts, Plaintiff's assertions are conclusory and do not identify how the acts are completely outside the authority of an official."); *Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01584-APG-GWF, 2016 WL 950920, at *3 (D. Nev. March 7, 2016) ("[P]laintiffs point only to the conclusory statements in their amended complaint that LVMPD acted in 'bad faith.' They offer no factual allegations, either in the amended complaint or in their briefing, to support their assertion that LVMPD acted in bad faith in training, supervising, and retaining its officers."). Accordingly, Defendants' Motions to Dismiss Plaintiff's negligent supervision claim are granted.

### D. Wrongful Death

Defendants also seek dismissal of Plaintiff's wrongful death action on the basis that they are entitled to discretionary immunity. (LVMPD's MTD 8:9–10); (Def. Officers' MTD 14:15–

16).  Plaintiff responds that discretionary immunity does not apply because the Defendant Officers were acting pursuant to an operational plan and in accordance with the directives of their supervisors. (Resp. to LVMPD's MTD 13:23–26, ECF No. 49).

Plaintiff alleges that "Defendant Officers pulled over Mr. Rankin within the course and scope of their employment for the [LVMPD].  Therefore [LVMPD] is liable for the actions of Defendant Officers." (SAC ¶ 64).  Plaintiff further alleges "Defendants' negligence and reckless disregard for others is the sole and proximate cause of the personal injuries, medical expenses and death of Ms. Gallucci," and that Defendants "knew or should have known" that such disregard "for the safety of others was dangerous and could lead to serious and life threatening injuries." (SAC ¶¶ 65–66).

"Under Nevada law, a decedent's heirs and personal representatives may bring a claim against any person who caused the death by 'wrongful act or neglect.'" *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192–93 (D. Nev. 2008) (quoting N.R.S. § 41.085).  In Nevada, an employer may be held liable for negligent and intentional torts of its employees under a theory of *respondeat superior. Williams v. Las Vegas Metro. Police Dep't*, No. 2:13-cv-1340-GMN-NJK, 2016 WL 1169447, at *7 (D. Nev. March 22, 2016) (citing *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1106 (D. Nev. 2001)).  However, "[w]ithout wrongfulness of the employee, there can be no employer liability under *respondeat superior.*" *Id.*

As discussed *supra*, Nevada had adopted a federal two-part test that immunizes municipalities from tort actions that arise from (1) an element of individual judgment or choice, and (2) are based on considerations of social, economic, or political policy. *Martinez*, 168 P.3d at 729.  Under this test, the Ninth Circuit has recognized that "[p]olice officers exercise discretion and are thus generally immune from suit where the act at issue required personal deliberation, decision, and judgment, rather than obedience to orders, or the performance of a

duty in which the officer is left no choice of his own." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014).

Plaintiff argues that LVMPD is not entitled to immunity because Defendant Officers "violated the policies and procedures of [LVMPD] and were acting in accordance with an operational plan at the direction of supervisors and a case agent." (Resp. to LVMPD's MTD 14:18–20, ECF No. 49). In addition, Plaintiff argues that discretionary immunity does not apply because Defendant Officers acted in bad faith. (*Id.* 15:4–8).

Plaintiff's arguments fail for the following reasons. First, Plaintiff's assertion that Defendant Officers were "acting pursuant to an operational plan" does not necessarily mean that Defendant Officers failed to exercise individual judgment or choice in executing the plan. Plaintiff's Complaint contemplates such discretion by alleging that Defendant Officers "allowed Rankin to get into his vehicle and drive away from his residence," only to later "initiate[] a stop of Mr. Rankin's vehicle," and subsequently "pursue Rankin." (*See* SAC ¶¶ 24–25, 32). That Defendant Officers opted to apprehend Rankin away from his residence suggests that they employed the kind of individual judgment and choice protected by discretionary immunity. Indeed, the Ninth Circuit as well as other circuit courts have recognized that an officers' decisions as to how to effectuate an arrest is covered by discretionary immunity. *See Sandoval*, 756 F.3d at 1168 ("Officers' decisions 'as to how to accomplish a particular seizure or search [are] generally considered . . . discretionary determination[s] under Nevada law, and officers are therefore immune from suit as to state law claims arising therefrom in most cases.") (quoting *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007)); *Hart v. United States*, 630 F.3d 1085, 1090 (8th Cir. 2011) ("We readily conclude a federal law enforcement officer's on-the-spot decisions concerning how to effectuate an arrest—including how best to restrain, supervise, control or trust an arrestee—fall within the discretionary function exception to the FTCA absent a specific mandatory directive

to the contrary."); *Williams v. United States*, 314 F. App'x 253, 258 (11th Cir. 2009) (unpub. per curiam) ("[T]he decision regarding how to best effectuate an arrest warrant is 'fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate.") (quoting *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)).

Furthermore, Plaintiff has not pleaded any facts suggesting that Defendant Officers violated a mandatory directive in the course of their pursuit of Rankin. (*See* SAC ¶¶ 61–70). Moreover, Plaintiff's Complaint does not allege that Defendant Officers acted in bad faith in initiating Rankin's arrest. (*See id.*).  Therefore, Defendant Officers are shielded by discretionary immunity and LVMPD cannot be held liable under a theory of *respondeat superior*.

### E.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995)).

However, dismissal is proper "when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  Further, courts may dismiss the complaint without leave to amend when a plaintiff's amendment "would fail to cure the pleading deficiencies and amendment would be futile." *Id.*

Here, after allowing Plaintiff to amend his Complaint twice, Plaintiff has consistently failed to allege the necessary facts to support his constitutional and state law claims against LVMPD and Defendant Officers.  Because Plaintiff continuously fails to cure the pleading deficiencies, the Court finds that granting Plaintiff leave to amend for a third time would be futile.  Accordingly, the Court grants LVMPD and Defendant Officers' Motions to Dismiss with prejudice.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that LVMPD's Motion to Dismiss, (ECF No. 46), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Officers' Motion to Dismiss, (ECF No. 47), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's section 1983 claim for municipal liability against LVMPD, section 1983 claims against Defendant Officers, and state law claims for negligent supervision and wrongful death against all Defendants are dismissed with prejudice.

The Clerk of Court is instructed to close the case.

**DATED** this ___28___ day of February, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court